IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DAN LARRY PENNINGTON,** *et al.*  **PLAINTIFFS**
*Individually and on Behalf of all Others Similarly Situated*

v.   Case No. 4:20-cv-00178-LPR

**BHP BILLITON PETROLEUM (FAYETTEVILLE) LLC,**  **DEFENDANTS**
**MMGJ ARKANSAS UPSTREAM LLC, and**
**MERIT ENERGY INC.**

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) and (6).[1]  Defendants argue that Plaintiffs' claims are time-barred and otherwise insufficient.  Defendants alternatively request that the Court strike Plaintiffs' class allegations under Federal Rules of Civil Procedure 12 and 23.[2]  The Court will grant in part, deny in part, and stay in part Defendants' Motion to Dismiss.

## Background

For purposes of this Motion, the Court accepts all of the factual allegations in the Amended Complaint as true and views them (and reasonable inferences therefrom) in the light most favorable to Plaintiffs.[3]  This case is about royalty payment obligations under three variants of oil

---

[1] Defs.' Mot. to Dismiss (Doc. 10).

[2] *Id.* at 1-2.

[3] *See, e.g.*, *Stockley v. Joyce*, 963 F.3d 809, 816 (8th Cir. 2020).  On the other hand, the Court need not accept as true the conclusions Plaintiffs draw from their factual allegations.  *See, e.g.*, *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (a court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts"); *see also Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 409 (8th Cir. 2012) ("A complaint that consists of no more than conclusory allegations or that merely applies labels to defendants' conduct will not survive a motion to dismiss.").

and gas leases. Plaintiffs are the lessors in the oil and gas leases.[4] Defendants are the lessees.[5] The named Plaintiffs are Dan Larry Pennington, Norma J. Bryant, and Aaron Parish Black, as Trustee of the Ralph J. and Reba J. Family Trust and as Trustee of the Reba J. Parish Trust.[6] Plaintiffs sued Defendants individually and on behalf of three subclasses of others similarly situated.[7] Defendants are MMGJ Arkansas Upstream, LLC, BHP Billiton Petroleum (Fayetteville), LLC, and Merit Energy Company, LLC. MMGJ is the successor-in-interest to BHP Billiton Petroleum (Fayetteville).[8]

In short, Plaintiffs leased natural gas drilling rights to Defendants in exchange for royalty payments. Plaintiffs allege that Defendants have breached their respective leases by failing to pay royalties in accordance with the leases' respective royalty provisions.[9] More specifically, Plaintiffs allege that Defendants have underpaid royalty payments owed to them (and others similarly situated) every month since January 1, 2015.[10] Because each named Plaintiff has a different lease, the Court will briefly describe the relevant portions of each lease's royalty provision.

### I. The Royalty Provisions

Named Plaintiff Pennington represents himself and the first proposed subclass.[11] The Pennington Leases (and others like it) contain an "actual amount received" royalty provision,

---

[4] Pls.' Am. Compl. (Doc. 8) ¶¶ 16, 45, 74.

[5] *Id.* ¶¶ 19-20, 48-49, 80-81.

[6] *Id.* at 1.

[7] *Id.* ¶ 13.

[8] *Id.* at 1.

[9] *Id.* ¶¶ 26, 55, 87.

[10] *Id.* ¶¶ 42(B), 71(B), 103(B).

[11] *Id.* ¶ 13.

which provides that the lessee shall:

> pay Lessor for gas of whatsoever nature or kind (with all of its constituents), including but not limited to casinghead gas, coal seam gas, coal bed methane, and all other gaseous or vaporous substances, produced and sold and used off the lease premises or used in the manufacture of products therefrom, *1/5 of the gross proceeds* for the gas sold, used off the premises, or in the manufacture of the products therefrom, *but in no event more than 1/5 of the actual amount received by the Lessee*, said payments to be made monthly.[12]

Named Plaintiff Bryant represents herself and the second proposed subclass.[13] The Bryant Lease (and others like it) contains a "gross proceeds" royalty provision, which provides that the lessee shall:

> pay Lessor for gas and oil of whatsoever nature or kind (with all of its constituents), including but not limited to casinghead gas, coal seam gas, coal bed methane, oil, and all other gaseous or vaporous substances, and all pooling and commingling production, products sold or used off the premises or used in the manufacture of products therefrom, twenty percent (20%) *of the gross proceeds, with no production or transportation fees deducted*, for the gas and oil sold, used off th[e] premises, or in the manufacture of products therefrom, said payments to be made monthly. . . .
>
> *Lessee shall not deduct any costs or expenses from such gross proceeds* except Lessor's pro rata share of any severance taxes that may become payable out of the Lessor's share of gross production; . . .[14]

Finally, named Plaintiff Black represents the "Parish Trust Lease" and the third proposed subclass.[15] The Parish Trust Lease (and others like it) contains the following natural gas royalty provision, which provides that the lessee shall:

> pay, or as required by law, contribute to be paid to Lessor a royalty of 3/16th of the proceeds realized by lessee from the sale of all gas, including all substances contained in such gas, but in no event more

---

[12] Ex. 1 to Pls.' Am. Compl. (Doc. 8-1) at 11 (emphasis added); *see also* Pls.' Am. Compl. (Doc. 8) ¶ 17.

[13] Pls.' Am. Compl. (Doc. 8) ¶ 13.

[14] Ex 3 to Pls.' Am. Compl. (Doc. 8-3) at 3 (emphasis added); *see also* Pls.' Am. Compl. (Doc. 8) ¶ 46.

[15] Pls.' Am. Compl. (Doc. 8) ¶ 13.

>or less than the actual amount received by Lessee, less applicable taxes, said payments to be made monthly.  If such gas is used by Lessee off the leased premises or used for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 3/16th of the market value at the well for gas so used.[16]

The Parish Trust Lease (and others like it) also contains the following "Marketing Enhancement Clause":

>Lessor's royalty *shall never bear or be charged with, directly or indirectly, any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of oil and/or gas produced from the leased premises.*  There shall be no deductions from Lessor's royalty for costs and expenses associated with the construction, operation, or depreciation of any pipeline, gathering system, plant or other facility or equipment for processing and /or treating oil and /or gas or their constituents produced from the leased premises.  However, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.[17]

### II. The Process and Payments

Despite the differences in the leases and their respective royalty payment provisions, Plaintiffs allege that Defendants breached the respective leases in the same manner and through the same course of events.[18]  Indeed, each of the named Plaintiffs originally entered into oil and gas leases with Chesapeake Exploration, LLC.[19]  On or about January 1, 2011, Chesapeake assigned its interest in each of the leases to BHP Billiton Petroleum (Fayetteville) and BHP

---

[16]   Ex. 4 to Pls.' Am. Compl. (Doc. 8-4) at 2; *see also* Pls.' Am. Compl. (Doc. 8) ¶ 75.

[17]   Ex. 4 to Pls.' Am. Compl. (Doc. 8-4) at 6 (emphasis added); *see also* Pls.' Am. Compl. (Doc. 8) ¶ 76.

[18]   *Compare* Pls.' Am. Compl. (Doc. 8) ¶¶ 14-27, *with id.* ¶¶ 43-56, *and id.* ¶¶ 72-88.

[19]   *Id.* ¶ 16 (Pennington on June 9, 2008); *id.* ¶ 45 (Bryant on March 30, 2010); *id.* ¶ 74 (Parish Trusts on August 13, 2007).

4

Petroleum (Arkansas Holdings) LLC.[20]  "BHP Fayetteville and BHP Arkansas owned the lessee's interests . . . between January 1, 2011 and July 1, 2018, at which time BHP Fayetteville and BHP Arkansas assigned their interests . . . to Merit and/or MMGJ Upstream."[21]  Merit and/or MMGJ Upstream have owned these interests from July 1, 2018 through the present.[22]

"With the consent of Defendants," SEECO, Inc. has operated Plaintiffs' wells and "paid royalties to [Plaintiffs] on behalf of the Defendants with respect to the natural gas produced and sold from" Plaintiffs' wells.[23]  Since January 1, 2015, Plaintiffs have "received royalties from SEECO, Inc., on behalf of one or more of the Defendants, based on the production of natural gas from wells subject to" the respective royalty agreements.[24]  The process by which Plaintiffs have been receiving their royalty payments is as follows.

Since January 1, 2015, SEECO has had an agreement with DeSoto Gathering Company, LLC, "in which DeSoto charged SEECO certain gathering, treating, and compression fees in exchange for providing gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing services ('midstream services') for the natural gas produced" from Plaintiffs' wells.[25]  "After the midstream services [are] provided by DeSoto to transform the raw natural gas into a marketable form," all of the natural gas produced from Plaintiffs' wells is "transferred to SWN Energy Services Company, LLC ('SES')."[26]  Once SES

---

[20] *Id.* ¶¶ 19, 48, 80.

[21] *Id..*

[22] *Id.* ¶¶ 20, 49, 81.

[23] *Id.* ¶¶ 14, 43, 72.

[24] *Id.*

[25] *Id.* ¶¶ 21, 50, 82.

[26] *Id.* ¶¶ 23, 52, 84.  SEECO, Desoto, and SES are all wholly owned subsidiaries of SWN Energy Company.  *Id.* ¶¶ 22-23, 51-52, 83-84.

receives the marketable gas, it sells "the natural gas to third parties . . . ."[27] SES "then remits the proceeds to SEECO based on a weighted average sales price ('WASP') calculated by SES."[28] Finally, SEECO pays Plaintiffs their respective royalties after it deducts from the WASP "the fees charged by DeSoto for the midstream services required to transform the raw gas into a marketable product . . . ."[29]

Plaintiffs allege that, "[i]n the calculation and payment of royalties to [Plaintiffs] . . . SEECO did not pay royalties, on behalf of the Defendants, based upon the *gross proceeds* received on the sale of natural gas to third party purchasers as required by" the respective royalty agreements.[30] Plaintiffs allege that "SEECO improperly deducted various post-production costs from the sales price of the natural gas in its calculation and payment of royalties to" Plaintiffs and all of the proposed subclass members.[31]

## Discussion

On June 3, 2020, Defendants filed the instant Motion to Dismiss.[32] Defendants argue that dismissal is appropriate under Rule 12(b)(2) and (6).[33] Alternatively, Defendants assert that Plaintiffs' class claims should be stricken from the Amended Complaint.[34] Because this is a diversity jurisdiction case, the Court will apply the substantive law of the forum state—Arkansas.[35]

---

[27] *Id.* ¶¶ 23, 52, 84.

[28] *Id.*

[29] *Id.* ¶¶ 24, 53, 85.

[30] *Id.* ¶¶ 25, 54, 86 (emphasis added).

[31] *Id.*

[32] Defs.' Mot. to Dismiss (Doc. 10).

[33] *Id.* ¶¶ 4-7.

[34] *Id.* ¶ 8.

[35] *See, e.g.*, *May v. Nationstar Mortg., LLC*, 852 F.3d 806, 813 (8th Cir. 2017) ("When exercising diversity jurisdiction, as we do here, we apply the forum state's substantive law to any state-law claims.").

### I. Rule 12(b)(2)

Defendants' personal jurisdiction argument is only about Merit.  In order to survive a motion to dismiss based on a lack of personal jurisdiction, the party asserting jurisdiction must make a *prima facie* showing of personal jurisdiction.[36]  Defendants assert that the Amended Complaint "fails to establish that this Court has general or specific jurisdiction over Merit, a limited liability company organized under the laws of Delaware."[37]  Defendants argue that the Amended Complaint "contains no allegations that Merit did anything in Arkansas with regards to Plaintiffs that establishes specific jurisdiction."[38]

The Amended Complaint alleges that "[t]his Court has personal jurisdiction over Merit and MMGJ Upstream, because such defendants have concluded substantial business activities in the State of Arkansas . . . ."[39]  The Amended Complaint further alleges that "[s]uch defendants have transacted business in Arkansas, held property in Arkansas, operated wells in Arkansas, and paid royalties to persons residing in Arkansas, and therefore personal jurisdiction is proper under Arkansas' long-arm statute . . . and the Due Process Clause of the United States Constitution."[40]  Plaintiffs contend that "[t]hese allegations . . . are more than sufficient to establish that this Court has *general* personal jurisdiction over Defendant Merit."[41]

A court may assert general jurisdiction over a foreign corporation only if that corporation has developed "continuous and systematic general business contacts"[42] with the forum state "[so]

---

[36] *See, e.g.*, *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011).

[37] Defs.' Mot. to Dismiss (Doc. 10) ¶ 5.

[38] *Id.*

[39] Pls.' Am. Compl. (Doc. 8) ¶ 11; *see also* Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 12) at 7.

[40] Pls.' Am. Compl. (Doc. 8) ¶ 11.

[41] Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 12) at 7 (emphasis added).

[42] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

as to render [it] essentially at home in the forum State."[43]  Said differently, a court has general jurisdiction over a corporation where "the corporation is fairly regarded as at home."[44]  The paradigmatic forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business.[45]  Aside from these paradigmatic forums, there may be an "exceptional case" where a corporate defendant's operations in another forum is "so substantial and of such a nature as to render the corporation at home in that State."[46]

Plaintiffs argue that this Court "clearly has general personal jurisdiction over Defendant Merit" because, "[i]n 2019, Merit operated approximately 870 wells in the State of Arkansas, and produced more than sixty billion cubic feet of natural gas, thus demonstrating that Merit has carried on a continuous and systematic part of its general business in Arkansas."[47]  But the Supreme Court has repeatedly explained that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts."[48]  Instead, the inquiry "'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'"[49]

Defendants assert that Plaintiffs' evidence "does nothing to establish that Merit's operations are so substantial as to render Merit at home in Arkansas."[50]  Defendants are correct.

---

[43] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[44] *Id.* at 924.

[45] *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

[46] *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG*, 571 U.S. at 139 n.19).

[47] Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 12) at 6.  "When considering whether personal jurisdiction exists under the long-arm statute, it is permissible to consider matters outside the pleadings." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998); *see also* FED. R. CIV. P. 12(d) (limiting summary-judgment conversion to Rule 12(b)(6) and Rule 12(c) motions).

[48] *BNSF Ry. Co.*, 137 S. Ct. at 1558 (quoting *Daimler AG*, 571 U.S. at 139 n.20).

[49] *Id.* (quoting *Daimler AG*, 571 U.S. at 139 n.20).

[50] Defs.' Reply to Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 17) at 6.

Magnitude alone does not chin the bar. And even if it could, Defendants note that "Merit has roughly 25,000 wells spread across six states," and that "Merit's operations in Arkansas accounted for only about 10% of its overall revenue in 2019."[51] In short, Merit's "largest operations are all in other states."[52] Plaintiffs have therefore failed to make a *prima facie* showing of general personal jurisdiction over Merit. And Plaintiffs have not produced any other facts or advanced any other arguments relating to any other basis for exercising personal jurisdiction over Merit.[53] Accordingly, Defendants' Motion to Dismiss Merit under Federal Rule of Civil Procedure 12(b)(2) is granted without prejudice.

## II. Rule 12(b)(6)

Defendants make two arguments for dismissal under Rule 12(b)(6). First, Defendants contend that Plaintiffs' claims are barred by the five-year statute of limitations for asserting breach of contract claims in Arkansas.[54] Second, Defendants argue that Plaintiffs' Amended Complaint fails to satisfy "the *Twombly* standard for pleading claims."[55] The Court will consider each argument in turn.

---

[51] *Id. See supra* note 47.

[52] Defs.' Reply to Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 17) at 6.

[53] Defendants also argue that (1) the Amended Complaint failed to allege facts demonstrating specific jurisdiction, (2) Merit is not MMGJ's parent, and (3) even if Merit was MMGJ's parent, Plaintiffs failed to plead any facts "that even attempt to pierce the corporate veil." Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 11) at 6-8. Plaintiffs' did not respond to any of these arguments in their Response in Opposition to Defendants' Motion to Dismiss. Instead, Plaintiffs elected to argue only "that this Court has general personal jurisdiction over Defendant Merit." Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 12) at 7. And Plaintiffs' deliberately excluded from their Response any reliance on corporate parentage, including omitting reference to the portion of the Amended Complaint alleging that "Merit controls its subsidiary, MMGJ . . . ." *See id.* The Court will not consider alternative grounds for personal jurisdiction that Plaintiffs deliberately abandoned. Defendants may be right or wrong about the particulars of the three arguments. But Plaintiffs waived or forfeited whatever counter-arguments they might have had.

[54] Br in Supp. of Defs.' Mot. to Dismiss (Doc. 11) at 4-6.

[55] *Id.* at 8-10.

### A. Statute of Limitations

Although a statute of limitations argument is an affirmative defense, it may properly be asserted through a Rule 12(b)(6) motion to dismiss when it "appears from the face of the complaint itself that the limitation period has run."[56] If "the face of the complaint indicates that the limitations period has expired, the plaintiff can only survive a 12(b)(6) motion to dismiss by showing, by a preponderance, that the statute of limitations was tolled."[57] Defendants contend that the face of Plaintiffs' Amended Complaint shows that Plaintiffs failed to file suit within the five-year statute of limitations period for written contract claims under Arkansas Code § 16-56-111.[58] Defendants note that suit was filed on February 21, 2020, yet Plaintiffs allege "a breach of contract that extends back more than five years to at least January 1, 2015, if not earlier . . . ."[59]

Plaintiffs agree that Arkansas Code § 16-56-111 defines the applicable limitations period.[60] But Plaintiffs disagree with Defendants' application of that provision to the facts in this case. According to Plaintiffs, the five-year limitations period applies anew to each and every monthly royalty payment that SEECO issued.[61] Thus, while the statute of limitations may bar Plaintiffs' claims for underpayment prior to February 21, 2015, each payment since that time falls within the applicable limitations period and is therefore not barred.

Arkansas Code § 16-56-111(a) states that "[a]ctions to enforce written obligations, duties, or rights . . . shall be commenced within five (5) years after the cause of action shall accrue."

---

[56] *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (citation and internal quotation marks omitted); *see also Schmidt v. Newland*, 927 F.3d 1038, 1041 (8th Cir. 2019).

[57] *Schmidt*, 927 F.3d at 1041.

[58] Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 11) at 4.

[59] *Id.*

[60] Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 12) at 6.

[61] *Id.* at 6-7.

Arkansas Code § 16-56-111(b) provides that "partial payment or written acknowledgment of default shall toll this statute of limitations." Defendants argue that the exception found in § 16-56-111(b) does not apply to the facts in this case.[62] Defendants are correct. This case does not involve partial payments. Although Plaintiffs are paid periodically (each month), the payment is not partial. Every month, full payment is to be made under the terms of each lease. Thus, Plaintiffs' reliance on *Karnes v. Marrow*[63] and *Cobb v. Leyendecker*[64] is misplaced. Whether Plaintiffs' claims are barred in whole, or only in part, comes down to the meaning of "cause of action" and "accrue" in § 16-56-111(a). That question, in turn, likely requires a detailed analysis of Arkansas common law and then a determination of whether the statute adopted or altered the common law meaning of those terms.

The Arkansas Supreme Court has explained that a cause of action typically accrues the moment the right to commence an action comes into existence.[65] And, with respect to a breach of contract claim, the Arkansas Supreme Court has explained that the right to commence an action comes into existence "when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached."[66] Said differently, a breach of contract claim accrues "'when the plaintiff could have first maintained the action to a successful conclusion.'"[67] But all this still begs the real question at issue here—whether the Arkansas Supreme Court would treat each monthly payment as a separate and distinct breach of contract claim. Some courts refer to

---

[62] Defs.' Reply to Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 17) at 2-5.

[63] 315 Ark. 37, 864 S.W.2d 848 (1993).

[64] 89 Ark. App. 167, 200 S.W.3d 924 (2005).

[65] *Shelter Mut. Ins. Co. v. Nash*, 357 Ark. 581, 587, 184 S.W.3d 425, 428 (2004).

[66] *Id.* at 588, 184 S.W.3d at 428.

[67] *Dupree v. Twin City Bank*, 300 Ark. 188, 191, 777 S.W.2d 856, 858 (1989) (quoting 51 Am. Jur. 2d, *Limitation of Actions* § 107 (1970)).

this as a separate-accrual question.[68] Other courts refer to this as a divisibility question.[69] Ultimately, struggling to choose the perfect nomenclature may be more trouble than it's worth. The substance is what's important.

The Court is "bound by decisions of the Arkansas Supreme Court as to the meaning of Arkansas law."[70] But the Arkansas Supreme Court has not had occasion to address a statute of limitations issue quite like the one presented here. Neither Party has pointed the Court to a definitively controlling case. In such circumstances, the Court can "'look to relevant state precedent, analogous decisions, considered dicta, and any other reliable data to determine how the Supreme Court of Arkansas would construe Arkansas law.'"[71] Unfortunately, the authorities submitted by the Parties have not been very helpful to the Court in its endeavor to predict how the Arkansas Supreme Court would resolve the statute of limitations question.

This is not the Parties' fault. The Court's own research into Arkansas case law has revealed that there really isn't much to clearly point one way or the other. The Court has found, at most, fleeting whispers and inchoate echoes that suggest that the Arkansas Supreme Court would recognize each monthly royalty underpayment as a separate breach of contract with its own five-year limitations period.[72] And there is at least equal support for the proposition that the Arkansas

---

[68] *See, e.g., Hi-Lite Prod. Co. v. Am. Home Prod. Corp.*, 11 F.3d 1402, 1408-10 (7th Cir. 1993).

[69] *See, e.g., Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 465-70 (6th Cir. 2013).

[70] *Curtis Lumber Co. v. Louisiana Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010).

[71] *Id.* (quoting *In re W. Iowa Limestone, Inc.*, 538 F.3d 858, 866 (8th Cir. 2008)) (cleaned up).

[72] *Cf. St. Louis, I.M. & S. Ry. v. O'Baugh*, 49 Ark. 418, 5 S.W 711 (1887) (holding in a property case that two very similar violations of a contract were separate and distinct despite sharing a common root, and therefore recovery on the first violation did not preclude a later claim on the second violation); *accord* 50 C.J.S. Judgments § 983 (explaining that a "judgment recovered for a single breach of a continuing contract is not a bar to a suit for a subsequent breach," and that "[c]ontractual rights that are triggered and pursued after an initial action is filed on the contract are not barred by res judicata because the prior judgment cannot be given the effect of extinguishing claims which did not even then exist").

Supreme Court would come out the other way.[73]

My intuition is that the Arkansas Supreme Court would reach a conclusion similar to the one reached by the Sixth Circuit in *Lutz v. Chesapeake Appalachia, LLC*.[74] That is, the Arkansas Supreme Court would "hold that plaintiffs are permitted to pursue their breach of contract claim pertaining to any underpayments of royalties that occurred within the" limitations period.[75] But this is just an intuition. It's not even a guess, much less an educated guess, much less a prediction or determination supported by reliable data. In my view, principles of comity and federalism require more. In this case, that means the right thing to do is to certify the statute of limitations question to the Arkansas Supreme Court. The Arkansas Supreme Court should have the opportunity to authoritatively interpret the relevant state statute and background state common law, especially because a decision on this issue in this case could have wide-scale ramifications for other contracts made within the State. If I were to answer the statute of limitations question on my own, I would be treading perilously close to the very edges of my authority as a federal judge. My remit does not extend to making law and certainly not to making law for the State of Arkansas.

---

[73] *See Beckworth v. Diamante, Priv. Membership Golf Club, LLC*, 2010 Ark. App. 814, at 10, 379 S.W.3d 752, 760.

[74] 717 F.3d at 464-70 (interpreting Ohio law). Beyond reading some pretty obscure tea leaves from Arkansas case law, I believe the Arkansas Supreme Court would recognize the common sense of Plaintiffs' position and the potential dangers of Defendants' position. Consider the following hypothetical. A mineral exploration company underpays (from the lessor's perspective) on a few monthly royalty payments, based on its reading of the contract and associated statutes. The lessor complains to the company. The company maintains that its reading is correct, refuses to make up the differences for the months already paid, but nonetheless begins to pay for subsequent months what the lessor believes is the required contractual amount. After five years pass from the first monthly underpayment, could the mineral exploration company really just go back to making monthly underpayments because any suit would be time-barred? That doesn't seem like a proposition the Arkansas Supreme Court would espouse. Obviously, there are differences between this hypothetical and the case at bar. The monthly underpayments in the case at bar were continuous as opposed to punctuated. And there was never even an implied suggestion that Defendants were backing off of their "controversial" read of the contract in the case at bar. Still, the theory advanced by Defendants to justify their position in the case at bar appears to be absolute, and would therefore apply with similar force in the hypothetical.

[75] *Id.* at 470.

B.     *Failure to State a Claim*

"[A] complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"[76]  A claim is facially plausible if the alleged facts allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[77]  In other words, the factual allegations must be enough to raise the right to relief "above the speculative level."[78]  This requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[79]  To state a breach of contract claim under Arkansas law, "the complaint must assert (1) the existence of a valid and enforceable contract between the plaintiff and defendant, (2) the obligation of defendant thereunder, (3) a violation by the defendant, and (4) damages resulting to plaintiff from the breach."[80]

Defendants argue that Plaintiffs' allegations do not satisfy the *Twombly* standard for pleading claims.[81]  The Court disagrees.  Viewing the facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have satisfied the *Twombly* pleading standard.  Plaintiffs' Amended Complaint alleges: (1) the existence of valid lease agreements between Plaintiffs and Defendants; (2) Defendants' monthly royalty payment obligations; (3) breaches of Defendants' royalty payment obligations to Plaintiffs; and (4) damages to Plaintiffs resulting from Defendants' breaches.

Defendants' Reply Brief concedes that MMGJ is a "party to the leases at issue."[82]  But

---

[76] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[77] *Id.*

[78] *Twombly*, 550 U.S. at 555.

[79] *Id.*

[80] *Arkansas Dev. Fin. Auth. v. Wiley*, 2020 Ark. 395, at 5, 611 S.W.3d 493, 498 (citing *Ballard Grp., Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276, at 7–8, 436 S.W.3d 445, 450).

[81] Br. in Supp. to Defs.' Mot. to Dismiss (Doc. 11) at 8-10.

[82] Defs.' Reply to Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 17) at 6.

Defendants contend that Plaintiffs' Amended Complaint "does not contain any factual allegations regarding Merit's conduct, let alone any that establish a right of relief against Merit that is more than speculative."[83]  Notably, however, the factual allegations asserted against Merit are identical to the factual allegations asserted against MMGJ.[84]  Viewing the facts in the light most favorable to Plaintiffs, the Amended Complaint alleges that Merit *and* MMGJ have owned the lessee's interests in Plaintiffs' royalty agreements from July 1, 2018 through the present.[85]  Plaintiffs have stated a claim against Merit.  But, as already explained, Merit is dismissed without prejudice for lack of personal jurisdiction.

Finally, Defendants argue that Plaintiffs' failed to state a claim against MMGJ "because [Plaintiffs] do not allege that any of them ever notified MMGJ of this alleged breach or that MMGJ refused to perform."[86]  In other words, Defendants assert that Plaintiffs have waived their breach of contract claims by accepting the allegedly deficient royalty payments without protest "for up to five years and perhaps even longer."[87]  In response, Plaintiffs contend that Defendants' arguments are premature and that they are "not required to negate an affirmative defense in order to allege a plausible claim for breach of contract in their Amended Complaint."[88]

The Court can grant a Rule 12(b)(6) dismissal based on an affirmative defense.  But the practice is "unusual . . . at the pleading stage."[89]  Indeed, the existence of a justification is ordinarily

---

[83] Defs.' Mot. to Dismiss (Doc. 10) ¶ 6.

[84] Pls.' Am. Compl. (Doc. 8) ¶¶ 11, 19-20, 48-49, 80-81.

[85] Although the Amended Complaint alleges that the leases were owned by "Merit and/or MMGJ Upstream," the most favorable reading to Plaintiffs is that the leases were owned by Merit and MMGJ Upstream.

[86] Defs.' Mot. to Dismiss (Doc. 10) ¶ 7.

[87] Br. in Supp. to Defs.' Mot. to Dismiss (Doc. 11) at 9.

[88] Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 12) at 9.

[89] *Burlison v. United States*, 627 F.2d 119, 122 (8th Cir. 1980).

a question of fact that the defendant must prove.[90] For the Court to grant dismissal on the basis of a defense, the defense must be apparent on the face of the complaint. Such is not the case here. The face of the Amended Complaint does not demonstrate that Plaintiffs knew that they were receiving deficient payments. And it appears that Defendants are "also uncertain as to what information SEECO disclosed to each lessor and whether lessors knowingly accepted the payments offered as full accord and satisfaction of amounts due under the lease."[91] Defendants' Motion to Dismiss under Rule 12(b)(6) is denied.

### III. Motion to Strike Class Claims

Defendants alternatively argue that the Court should strike all of the class allegations in the Amended Complaint.[92] A district court ordinarily enjoys "'broad discretion in determining whether to certify a class.'"[93] This discretion is rooted in the factual nature of the certification inquiry, and in "'the district court's inherent power to manage and control pending litigation.'"[94] While Federal Rule of Civil Procedure 23 requires a court to decide whether it will certify a class "[a]t an early practicable time," the "propriety of class action status can seldom be determined on the basis of pleadings alone."[95] If the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, "the parties must be afforded the opportunity to discover and present

---

[90] *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982–83 (8th Cir. 2008).

[91] Defs.' Mot. to Dismiss (Doc. 10) ¶ 9(a); *see also* Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 11) at 11 ("MMGJ/Merit is entitled to examine what information SEECO disclosed to each lessor and *whether lessors knowingly accepted the payments offered* as full accord and satisfaction of amounts due under the lease. MMGJ/Merit is also entitled to examine *whether any lessor had knowledge* of the alleged underpayments and, *if so*, how long they knew about such alleged underpayments because their claims could be barred by the statute of limitations or laches.") (emphasis added).

[92] Defs.' Mot. to Dismiss (Doc. 10) ¶ 8.

[93] *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (quoting *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1323 (8th Cir. 1991)).

[94] *Id.* (quoting *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008)).

[95] *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir. 1977).

documentary evidence on the issue."[96]

Having reviewed the class allegations and the Parties' arguments, the Court concludes that it will not foreclose the possibility of class certification at the pleading stage. Defendants' request to strike the class allegations is premature. Plaintiffs will have an opportunity to make a timely motion for class certification, and Defendants will have an opportunity to oppose it. Neither Party should read into this decision any suggestion as to what the Court might think about class certification.

## Conclusion

For all of the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part, DENIED in part, and STAYED in part. Separate Defendant Merit Energy Company, LLC, is DISMISSED without prejudice for lack of personal jurisdiction. Except for the statute of limitations issue, Defendants' 12(b)(6) arguments are DENIED. Defendants' request that the Court strike Plaintiffs' class allegations is DENIED.

With respect to the statute of limitations issue, the Court will issue a Certification Order for transmission to the Arkansas Supreme Court within two weeks of the date of this Order. Each Party may submit, on or before April 7, 2021, a proposed certified question on the statute of limitations issue for my review. The corresponding portion of the Motion to Dismiss will be STAYED. The Clerk is directed to administratively terminate the Motion, which will be revived when the Arkansas Supreme Court responds to the Certification Order.

---

[96] *Id.*

IT IS SO ORDERED this 31st day of March 2021.

                                                               LEE P. RUDOFSKY
                                                               UNITED STATES DISTRICT COURT