**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**DAN LARRY PENNINGTON, et al.**                                                                   **PLAINTIFFS**
*Individually and on Behalf of a Class of Others Similarly Situated*


     **v.**                                        **Case No. 4:20-CV-00178 LPR**


**BHP BILLITON PETROLEUM (FAYETTEVILLE) LLC,**                        **DEFENDANTS**
   **AND MMGJ ARKANSAS UPSTREAM, LLC.**


**PLAINTIFFS' RESPONSE TO DEFENDANTS' REPLY BRIEF [ECF NO. 162] AND
FLYWHEEL ENERGY PRODUCTION, LLC'S AMICUS BRIEF [ECF NO. 161]**

Through its *Amicus Curiae* Brief, Flywheel Energy Production, LLC ("Flywheel") urges this Court to take a radical misstep by ignoring two important legal principles. First, that this Court should ignore the November 1, 2023 Arkansas Court of Appeals decision in the case styled *Flywheel Energy Prod., LLC v. Arkansas Oil & Gas Comm'n*, 678 S.W.3d 851 (Ark. App. 2023) ("*AOGC* Decision"), which clearly the only binding precedent on this Court. Second, that this Court should find, under Arkansas law, "private contracts play second fiddle to statutes" and therefore the negotiated for "gross proceeds" language in the Class Leases can be ignored by lessees. Neither of Flywheel's self-serving arguments have any merit under Arkansas law.

Flywheel first argues that the *AOGC* Decision is inapplicable to this dispute because the *AOGC* Decision "was primarily based on a 'course of dealing'" analysis and that the Arkansas Court of Appeals "made no attempt to engage with the statutory text" when coming to its conclusions. (ECF No. 161, p. 8). Contrary to Flywheel's attempt to discredit the Court of Appeal's review, the Court of Appeals did in fact conduct a *de novo* review of Ark. Code. Ann. § 15-72-305 ("Section 305"). *Flywheel*, 678 S.W.3d at 857. The Court of Appeals first analyzed the plain language of the statutory text of Section 305 in order to determine the intent of the legislature. *Id*. After a careful analysis, the Court of Appeals concluded that the statute is ambiguous. *Id*. The court then utilized the various tools of statutory interpretation at its disposal, including the agency's historical understanding of Section 305, to conclude that under Arkansas law, operators are not required to deduct postproduction costs from the first one eighth royalty. *Id.* at 857-60. As a result, the operators and lessees are required to calculate and pay royalties consistent with the written agreements entered into between the parties. *Id*.

Flywheel next argues this Court should ignore the MMGJ's royalty obligations under the Class Leases because in Arkansas, "private contracts play second fiddle to statutes." Not

1

unsurprisingly, Flywheel's argument is not supported by Arkansas law. (ECF No. 161, p. 6). The Arkansas Supreme Court has repeatedly held that parties are free to contract on any terms as they may agree and that negotiated agreements will be enforced to the extent it is not violative of state law. *Lewis v. Mid-Century Ins. Co.*, 210 S.W.3d 113, 116 (2005). Here, the only state law on point is the *AOGC* Decision which squarely rejects Flywheel's contention that "the statute requires the deduction of postproduction expenses." *Flywheel*, 678 S.W.3d at 860 and 863. Thus, Plaintiffs and MMGJ were free to negotiate and agree to the terms of the Class Leases, which undisputedly obligate MMGJ to pay royalties without deduction of any postproduction costs, and the Court is required to enforce their agreements as negotiated for and written. *Lewis*, 201 S.W.3d at 116.

I.   **FLYWHEEL'S ERRONEOUS DESCRIPTION OF THE *AOGC* DECISION.**

As a threshold matter, as a published decision from the Arkansas's intermediate state court, the *AOGC* Decision is binding. Federal courts sitting in diversity jurisdiction must apply substantive state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In the absence of authority from the state's highest court, federal courts are "bound by a decision of a state's intermediate appellate courts unless there is persuasive evidence that the highest court would rule otherwise." *King v. Order of United Com. Travelers of Am.*, 333 U.S. 153, 158 (1948). "[A] federal court adjudicating a matter of state law in a diversity suit [is] 'in effect, only another court of the State'" and therefore, bound by any decision that would bind a state trial level court. *Id*. at 163. (citing *Guaranty Trust Co. of New York v. York*, 329 U.S. 99, 108 (1945)). The *AOGC* Decision is a published opinion from Arkansas' intermediate court, and there is no evidence that the Arkansas Supreme Court would disagree with the *AOGC* Decision.

Flywheel's next suggestion that the "AOGC case was not a statutory interpretation case" simply ignores the entirety of the Court of Appeal's analysis and is clearly a misguided attempt to distinguish the *AOGC* Decision from the facts and law in this case. (ECF No. 161, pp. 7-8). True,

the *AOGC* Decision was a review of a final agency action, but the precise issue before the Court of Appeals was whether Section 305 unambiguously "requires the operator to pay the first one-eighth royalty from the net proceeds, to include postproduction costs." *Flywheel*, 678 S.W.3d at 857. Flywheel's self-serving contention that the "Arkansas Court of Appeals did not seek to interpret [Section 305]" is misleading at best. One of the major headings in the *AOGC* Decision is titled "Interpretation of Arkansas Code Annotated § 15-72-305(a)(3)." *Id*. at 858. Throughout the rest of the *AOGC* Decision, the Court of Appeals thoroughly analyzed the phrase "net proceeds" as used in Section 305 and determined that the statute does not requires operators, like Flywheel, to deduct postproduction costs from royalties.

## A. The *AOGC* Decision Applies to both "Integrated Royalty Owners" and "Leased Mineral Owners."

Flywheel's first argument that the *AOGC* Decision is distinguishable because that dispute only involved integrated royalty owners that have interests in model form leases, is erroneous. The distinction between "integrated royalty owners" and "leased mineral owners" does not allow this Court to disregard the *AOGC* Decision because this distinction is found nowhere in Section 305. Ark. Code. Ann. § 15-72-305(a)(3) states in pertinent part that:

> One-eighth (⅛) of all gas sold on or after the first day of the calendar month next ensuing after March 6, 1985, from any such unit shall be considered royalty gas, and the net proceeds received from the sale thereof shall be distributed to the owners of the marketable title in and to the *leasehold royalty* and *royalty as defined under § 15-72-304(d)*.

(emphasis added). The "leasehold royalty" refers to the "leased mineral owners" whose claims are at issue here, and the "royalty as defined under "15-72-304(d)" refers to "integrated royalty

3

owners" whose claims were at issue in the *AOGC* Decision.[1] At no point does Section 305 distinguish between an operator's royalty obligations to "leased mineral owners" versus "integrated royalty owners."

The *AOGC* Decision explains that "integrated royalty owners" were forced pooled into drilling units under the AOGC's statutory authority. *Flywheel*, 678 S.W. 3d at 854. To accommodate these "integrated royalty owners," the AOGC adopted a model form lease governing the operator's royalty obligations to those force pooled lessors. *Id*. The model form lease "permitted royalty deductions only for taxes, assessments, and true third-party expenses." *Id*. at 856. Thus, the Court of Appeals appropriately framed the issue as whether the AOGC's prohibition of deductions under its model form leases conflicts with Section 305's directive that the operator remit to the royalty owners the "net proceeds" received on the first one-eighth of all gas sold. The Court of Appeals ultimately determined that the model form leases did not conflict with Section 305 because the phrase "net proceeds" is ambiguous, and by extension, the statute does not require the deduction of any postproduction expenses. *Id*. at 862. The Court of Appeal's findings cannot be narrowly interpreted to apply only to "integrated royalty owners." Just because the "integrated royalty owners" took a different path, both "buckets" of owners arrived at the same destination; with leases governing the operator's royalty payment obligations.

Flywheel's portrayal of the differences between the two "buckets" of owners does not address the fundamental fact that both "buckets" of royalty owners are to receive royalties based on the plain language of their underlying oil and gas leases. (ECF No. 161, p. 6). If anything,

---

[1] Ark. Code. Ann. 15-72-305 provides "In the event there is an unleased mineral interest or interests in any drilling unit, the owner thereof shall be regarded as the owner of a royalty interest to the extent of a one-eighth interest in and to the unleased mineral interest."

Flywheel's self-serving description of these differences underscores the need for this Court to enforce the plain language of the Plaintiffs' oil and gas leases.

In its brief, Flywheel emphasizes that the primary distinction between the two "buckets" is that leased mineral owners, like the Plaintiffs here, should "receive the benefit of an arm's length transaction with the energy company. Whereas integrated mineral owners are forced-pooled into the drilling unit" and are subject to a model form lease. (ECF No. 161, p. 6). Flywheel then provides that "because [the integrated mineral owners] are deprived of the benefit of an arm's length transaction, the legislature saw fit to provide integrated minerals owners with additional protections." (ECF No. 161, p. 7). Yet, MMGJ's deduction of all postproduction costs from the first one-eighth royalty has resulted in the Plaintiffs and the putative Class members being deprived of the "benefit of [their] arm's length transaction." Flywheel and MMGJ cannot have it both ways. Either the Plaintiffs are entitled to receive the benefit of their negotiation for bargain - royalties based on gross proceeds - or the *AOGC* Decision is indistinguishable. Either way, it is abundantly clear under the *AOGC* Decision that Plaintiffs and the members of the putative Class are entitled to receive their royalties without the deduction of postproduction costs.

**B.      The Court of Appeals did not Merely Defer to the *AOGC's* Decision When it Found the Term "Net Proceeds" In Section 305 To Be Ambiguous.**

Flywheel next attempts to circumvent the *AOGC* Decision, by arguing that the *AOGC* Decision was wrongly decided because it did not conduct a *de novo* review of the final agency action, but instead merely established the *AOGC's* historic course of dealing with some operators. (ECF No. 161, p. 8). Flywheel's description of the *AOGC* decision cannot be reconciled with the Court's actual analysis and opinion.

First, the Court of Appeals clearly acknowledged that it was reviewing an appeal of the agency's interpretation of Section 305 and properly applied the *de novo* standard. *Flywheel*, 678

5

S.W.3d at 857 (quoting *Myers v. Yamayo Kogyo Co., Ltd.*, 597 S.W.3d 613, 617 (Ark. 2020). Further, the Court of Appeals explained that "where ambiguity exists, the agency's interpretation will be ***one of our many tools*** used to provide guidance…" *Id.* at 858 (emphasis added).

The Court of Appeals first reviewed the statutory text to independently determine that Section 305 is ambiguous. *Id.* at 860. The Court of Appeals reaffirmed the "basic rules of statutory constriction" to "give effect to the intent of the legislature." *Id.* at 859 (quoting *Sartor v. Cole*, 662 S.W.3d 697, 703 (Ark. App. 2023)). The Court of Appeals further explained that when a statute is ambiguous, courts "look to the language of the statute, the subject matter, the object to the accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.* at 860. The Court of Appeals independently determined that Section 305 is ambiguous, the Court of Appeals then correctly used the agency's interpretation of the statute as one of its many tools to ascertain the intent of the legislature. *Id.* at 857-60. While Flywheel clearly disagrees with the Court of Appeal's ultimate conclusions, Flywheel's accusation that the Court of Appeals did not interpret Section 305 has no merit.

### II. UNDER ARKANSAS LAW, CONTRACTS HAVE NEVER PLAYED "SECOND FIDDLE TO STATUTES."

Flywheel's position that this Court should ignore the MMGJ' royalty payment obligations under the Class Leases because "private contracts play second fiddle to statutes" is absurd. (ECF No. 161, p. 6). "The general right to make a contract in relation to his business is part of the liberty of the individual protected by the 14th Amendment of the Federal Constitution." *Lochner v. New York*, 198 U.S. 45, 53. (1905). This fundamental right is not abrogated simply because MMGJ wishes to increase its share of the proceeds at the expense of the Plaintiffs and the Class Members.

Despite the complex statutory and constitutional issues raised by Flywheel and the MMGJ, this is a straightforward breach of contract case. MMGJ cannot get around the fact that binding

6

contracts exist between the parties, and MMGJ consistently failed to honor the terms of these contracts.[2] Flywheel urges this Court to subvert MMGJ's royalty obligations under the Class Leases by replacing the plain language of the royalty provisions in the Class Leases with its strained interpretation of Section 305. (ECF No. 161, p. 6). Setting aside the fact that the *AOGC* Decision flatly rejects Flywheel's interpretation of Ark. Code. Ann. § 15-72-305, and the constitutional concerns implicated by Flywheel's position, there is simply no legal authority to support the notion that "private contracts play second fiddle to statutes" in Arkansas. Nor is there any case law to support Flywheel's contention that a Court is free to substitute the clear and unambiguous terms of an agreement with an ambiguous term contained in a statute. *Bull Motor Co. v. Murphy*, 270 S.W.3d 350, 354 (2007). To the contrary, the general purpose of the rule "incorporating the applicable law into every contract is to comply with the federal constitutional prohibition against the enactment of laws impairing contractual obligations, not to impose by law a particular meaning to a term used in the agreement." *Id.*

The Arkansas Supreme Court has repeatedly held that parties are free to contract on any terms as they may agree, and that agreement will be enforced by the court to the extent it is not violative of state law. *Lewis*, 210 S.W.3d at 116; *Chamberlin v. State Farm Mut. Auto. Ins. Co.*, 36 S.W.3d 281, 284 (2001). Here, the only state law on point is the *AOGC* Decision which squarely repudiates Flywheel's contention that "the statute requires the deduction of [all] postproduction expenses." *Flywheel*, 678 S.W.3d at 860 and 863.

Flywheel states that "Arkansas has a well-defined body of law concerning the effect of a statute on private contracts." (ECF No. 161, p. 6). This is true, but the "well-defined body of law"

---

[2] The Parties have already extensively briefed the Contracts Clause and Due Process Clause issues which are implicated through Flywheel's and the Defendants' proposed interpretation of Ark. Code. Ann. 15-72-305. (ECF Nos. 131, 134, 150, 154, and 155)

7

alluded to by Flywheel clearly requires this Court to enforce the plain language of the Plaintiffs' and the putative Class members' Class Leases. Indeed, the primary authority on which Flywheel relies comes from the *dissenting* opinion of Judge Marshall in *Bull Motor Co.*, 270 S.W.3d at 361. (ECF No. 161, p. 6, n. 20). Unsurprisingly, the majority opinion from the Court of Appeals decision in *Bull Motor Co.*, is contrary to the dissenting opinion on which Flywheel relies.

In *Bull Motor Co.*, the plaintiff purchased a "new truck" from defendant Bull Motor Company. *Id*. at 352. The plaintiff subsequently found out that his "new truck" had previously been stolen by an unknown thief, recovered, and then returned to Bull Motor Co. *Id*. The plaintiff was understandably upset that the dealership failed to disclose that his "new truck" had previously been taken for a joy ride by a thief and then sued Bull Motor Co. for breach of contract alleging that the "new truck" that he purchased was actually used. *Id*. at 354. Bull Motor Co. countered by alleging that, technically, the truck was "new" because the Arkansas Motor Vehicle Commission Act defined a "new" vehicle as one that had not been previously sold or titled". *Id*. at 353. Because the truck had been stolen, it had not been previously sold or titled, and therefore considered "new" under the statute. *Id*. The majority refused to impose the statutory definition of a "new" vehicle into the contract between the plaintiff and Bull Motor Co. because the commonly understood definition of a "new vehicle" does not include one that has been previously stolen, and because the plaintiff had no reason to know the statutory definition of a "new vehicle" at the time of purchase. *Id*. The majority's holding is consistent with the *well-established rule that parties are free to contract on any terms as they agree, and the court is required to enforce those terms as long as it is not violative of state law*. *See e.g. Chamberlin,* 36 S.W.3d at 284.

Here, there is no state law requiring lessees to an oil and gas lease to deduct postproduction expenses in the calculation and payment of royalties. *See Flywheel*, 678 S.W.3d at 858-60. Thus,

8

the Plaintiffs and the MMGJ were free to negotiate and agree to the terms of their oil and gas leases, which undisputedly obligate MMGJ to pay royalties without deduction of any postproduction costs, and the Court is required to enforce their agreements. *Lewis*, 201 S.W.3d at 116.

### III. THE TERM "NET PROCEEDS" AS USED IN SECTION 305 DOES NOT REQUIRE POSTPRODUCTION EXPENSES TO BE DEDUCTED FROM ROYALTIES.

In its brief, Flywheel again criticizes the Court of Appeals' decision by arguing that it "does not reach what deductions are and are not allowed under Ark. Code. Ann. § 15-72-305." (ECF No. 161, p. 9). However, this omission is not an oversight, but rather a direct result of the Court of Appeals' finding that the model form leases control what deductions can be taken and that the model form lease's prohibition of postproduction costs did not conflict with the ambiguous language used in the statute. In other words, because the Court of Appeals found that Section 305 does not govern an operator's royalty payment obligations, there was no need to determine what those hypothetical royalty obligations would or could be under the statute. Thus, any attempt by the Court of Appeals to "engage with or to define the terms 'net proceeds' and 'at the mouth of the well'" would have been an entirely redundant exercise. (ECF No. 161, p. 9). Instead, the Court of Appeals found: (1) the term "net proceeds" ambiguous; (2) that because the term "net proceeds" is ambiguous, the term cannot be read to require the deduction of postproduction costs; and (3) that with the deduction of postproduction costs not required under the statute, the model form leases' prohibition of such costs does not conflict with the statute. *Flywheel*, 678 S.W. 3d at 860-62. Flywheel agrees with this conclusion, by conceding that Arkansas law "**allows**" for the deduction of postproduction costs, a significant step back from Flywheel's previous position that Arkansas law "**requires**" the deduction of such costs. (ECF No. 161, p. 9).

Despite this concession, Flywheel again attempts to undermine the *AOGC* Decision by arguing that it is inapposite of the Arkansas Supreme Court decisions in *Hanna*, *Parnell*, and *Clear Creek*. (ECF No. 161, p. 10). However, the *AOGC* Decision specifically addresses these cases, and found none of them are dispositive of the meaning of the phrase "net proceeds." *Id.* at 860-62. In *Hanna*, the Arkansas Supreme Court did make a passing comment that the term "net" proceeds, could indicate an intention to allow postproduction costs. *Hanna Oil and Gas Co. v. Taylor*, 759 S.W. 2d 563, 565 (Ark. 1988). However, that issue was not before the court, and the court found the "most compelling" support for its determination that the lease did not allow the deduction of postproduction costs was the parties' historical practice of not including such deductions in the calculation of the plaintiffs' royalties. *Id*. It is also important to note that disputed postproduction costs at issue in *Hannah* began in October 1986, after the effective date of Section 305. *Id*. at 564. Likewise, the Arkansas Supreme Court decisions in *Parnell* and *Clear Creek*, do not support Flywheel proposed interpretation of the term "net proceeds." The underlying leases at issue in both cases did not contain any reference to "net proceeds" and the court did not attempt to interpret what "net proceeds" meant. *See generally, Parnell, Inc. v. Giller*, 372 S.W.2d 627 (Ark. 1963); *Clear Creek Oil & Gas Co. v. Bushmiaer*, 264 S.W. 830 (Ark. 1924). However, in both cases, the court determined the lessee's royalty obligation by interpreting the plain language of the leases. Consistent with these three decisions, this Court should determine MMGJ's royalty obligations by looking at the plain language of the leases at issue.

## **CONCLUSION**

For the reasons stated above, this Court should reject Flywheel's erroneous arguments.

DATED: April 5, 2024                               Respectfully submitted,

                                                                         Stacy A. Burrows, Co. Bar No. 49199
George A. Barton, Mo. Bar No. 26249
Seth K. Jones, KS Bar No. 27262
Barton and Burrows, LLC
5201 Johnson Drive, Suite 110
Mission, KS 66205
Email: george@bartonburrows.com
           stacy@bartonburrows.com
           seth@bartonburrows.com
Phone: (913) 563-6250

***ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED SUBCLASSES***